# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

DANAH LEE BETHSCHEIDER,

      **Plaintiff,**

      **v.**

WESTAR ENERGY, INC.,

      **Defendant.**

**Case No. 16-4006-CM**

## MEMORANDUM & ORDER

Plaintiff Danah Lee Bethscheider was hired by defendant Westar Energy, Inc. as an Accounts Payable Analyst beginning January 27, 2014. Less than four months later, defendant terminated plaintiff for excessive absenteeism. Plaintiff now brings this case against defendant alleging she was terminated in violation of the Americans with Disabilities Act ("ADA"). The matter is currently before the court on defendant's Motion for Summary Judgment (Doc. 29). For the reasons set forth below, the court grants the motion.

## I.  Background

Plaintiff was hired by defendant as an Accounts Payable Analyst beginning January 27, 2014. Her day-to-day responsibilities included managing defendant's corporate credit card program, which required plaintiff to communicate with other employees, vendors, and banks to make sure corporate credit cards were updated, used appropriately, successfully processed when used, and paid in a timely manner. Plaintiff was also responsible for managing pay cycles to ensure defendant's vendors were paid the correct amounts in a timely fashion. According to the Summary of Job Responsibilities and Requirements, the scheduled work hours for the position were Monday-Friday, 8:00 a.m. to 5:00 p.m., and a "satisfactory work record including good attendance" was required. (Doc. 30-6, at 2–3.)

According to plaintiff's supervisor, Vicki Shurtz, Manager of the Accounts Payable Department, regular attendance was an essential function of the Accounts Payable Analyst position because many of the job duties were time sensitive and most effectively and efficiently resolved only through required immediate communication.

In March 2014, plaintiff emailed Shurtz to request that her daily work schedule be from 8:00 a.m. to 4:40 p.m. each day, with a 30-minute lunch break. Shurtz agreed to the request. According to plaintiff's "Supervisor File," Shurtz met with plaintiff in March 2014 and informed her "she couldn't leave every day or frequent times during the week around 3:30 to pick up her daughter and call this lunch," and that she needed to "watch her attendance." (Doc. 30-9, at 2.) Plaintiff also discussed with Shurtz that she needed elective eye surgery. Shurtz told her it would be best if she could wait until she had more sick leave built up, but that it was ultimately her decision. (*Id.*) In May 2014, Shurtz called plaintiff into her office to discuss "how she was feeling" because she had been gone the past two days for illness. She noted that other employees had commented that plaintiff was away from her desk multiple times a day for 10-15 minutes at a time.

According to her file, plaintiff did not work the following days for the following reasons:

- January 29, 2014: Left work in the morning due to numbness in her arm;

- January 30, 2014: Called in sick due to a headache and numbness;

- February 5, 2014: Called to say she would not be coming in due to snow;

- February 12, 2014: Called in because of personal issues;

- February 13, 2014: Called in because of personal issues;

- March 28, 2014: Absent due to voluntary eye surgery;

- March 31, 2014: Absent due to voluntary eye surgery;

- April 25, 2014: Called in sick with the flu;

- May 6, 2014: Left work in the morning due to a headache and numbness;

- May 7, 2014: Absent due to a headache;

- May 8, 2014: Left work around noon to go to her daughter's kindergarten program and was gone the remainder of the day;

- May 14, 2014: Absent due to a headache.

Plaintiff did not dispute these records, but noted that on February 5, the staff was told if they were unable to make it in due to heavy snow, it was excused. She also confirmed that on February 12 – 13 she was absent due to being incarcerated on a domestic violence charge. And she claims that she sought the voluntary eye surgery because she thought it might eliminate her migraines.

On May 14, 2014, Shurtz decided to terminate plaintiff due to her excessive absenteeism. Shurtz determined that because regular and consistent attendance was a requirement of the position, plaintiff's chronic, frequent, and unpredictable absences from work prevented her from performing the essential functions of her job. Plaintiff had been absent 12 times in less than four months of employment. At the termination meeting, plaintiff was told her discharge was due to the following circumstances:

> Regular attendance is job related and consistent with our business needs. In the short period of time that [plaintiff] has been employed she has been absent 11 times for various personal reasons including calling in and leaving work early. Because she is chronically, frequently, and unpredictably absent from work, management has determined that she is unable to perform the functions of her job which is resulting in termination.

(Doc. 30-10, at 2.)

In an affidavit, plaintiff explained that she suffers from unpredictable and debilitating migraines and has since childhood. When she experiences a migraine, she is unable to, or is severely limited in her ability to participate in certain life activities. She claims that it takes her between 12 and 24 hours to recover from a migraine. Plaintiff also alleges that when she was hired, she was told that one of her benefits was "flex time," meaning that she needed to work 40 hours per week, but that she could set her

own schedule. She claims she was never told there was a problem with her attendance, and that Shurtz never objected to the absences when plaintiff notified her she would be gone.

Plaintiff also claims that she made Shurtz aware of her condition and thought it would not be an issue if she needed to miss work when suffering from a migraine. Plaintiff never specifically requested an accommodation from defendant (other than asking to go home for the day when she was suffering from a migraine) and Shurtz testified she had no knowledge that plaintiff suffered from a disability. Plaintiff testified, however, that Shurtz told her at the termination hearing "we can't work around you and your migraines, we have people going on vacation and we cannot have you missing, too." (Doc. 30-1, at 18.) Five of the twelve days plaintiff was absent from work were due to her migraine condition.

At the termination meeting, plaintiff, for the first time in her employment, inquired about leave under the Family and Medical Leave Act ("FMLA"). A human resources representative determined plaintiff did not qualify for FMLA leave because she had been employed for less than a year. Her termination was effective on May 16, 2014. Immediately following her termination, plaintiff and her sister called a nurse practitioner to request documentation regarding plaintiff's migraine condition so that she could "fight the termination." (Doc. 30-11, at 3.) The nurse refused to provide documentation because she had not seen plaintiff in many years. Plaintiff claims the last time she visited a doctor for her migraine condition was in 2013. She further reports having missed four to six days per year at other jobs due to her headaches.

## II.    Legal Standards

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A "genuine" factual dispute requires more than a mere scintilla of evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the initial burden of

showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party demonstrates an absence of evidence in support of an element of the case, the burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. The nonmoving party "may not rest upon the mere allegations or denials of his pleading." *Id.*

In making the summary judgment determination, the court must view the evidence and reasonable inferences in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Ultimately, the court evaluates "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 252.

### III.    Analysis

Plaintiff claims defendant terminated her employment in violation of the ADA. She argues that although defendant terminated her for excessive absenteeism, many of her absences were due to her migraine headache condition. She maintains her migraine headaches constitute a disability under the ADA and that defendant discriminated against her when it terminated her employment because of her migraine condition and by failing to provide her with reasonable accommodations for her condition.

The ADA prohibits employers from discriminating against a qualified individual on the basis of disability "in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To establish a prima facie case of discrimination under the ADA, plaintiff must show (1) that she is disabled, (2) that she is qualified with or without reasonable accommodation to perform the essential functions of the job she holds or desires, and (3) defendant discriminated against her because

of her disability. *E.E.O.C. v. BNSF Railway Co.*, 853 F.3d 1150, 1155 (10th Cir. 2017). If plaintiff can establish a prima face case of discrimination, the burden then shifts to defendant "to articulate some legitimate, nondiscriminatory reason for its actions." *Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1141 (10th Cir. 2011). Plaintiff then bears the burden to show defendant's nondiscriminatory reasons are pretext "designed to mask discrimination." *Id.*

Defendant moves for summary judgment arguing plaintiff cannot establish a prima facie case of discrimination under the ADA. Defendant claims plaintiff has not established she has a disability or that she was qualified, with or without reasonable accommodation, to perform the essential functions of her job. Defendant maintains that plaintiff was terminated not because of her migraine condition but because of her chronic, frequent, and unpredictable absences and because it could not reasonably accommodate her need to take leave every time she suffered from a migraine.

Defendant disputes that plaintiff was disabled under the ADA, but because her claim fails for other reasons, believes it is unnecessary to determine whether she is or is not disabled as a matter of law. The court agrees. Assuming without deciding that plaintiff suffers from a disability under the ADA, the court will address whether plaintiff is qualified with or without reasonable accommodation to perform the essential functions of her position.

Determining whether an individual is "qualified" within the meaning of the ADA involves a two-part inquiry: 1) whether the individual can perform the essential functions of the job; and 2) if the individual is unable to perform the essential functions of the job, whether any reasonable accommodation by the employer would enable her to perform those functions. *Mason v. Avaya Commc'ns, Inc.*, 357 F.3d 1114, 1118 (10th Cir.2004). "'Essential functions' are 'the fundamental job duties of the employment position the individual with a disability holds or desires.'" *Id.* at 1119 (quoting 29 C.F.R. § 1630.2(n)(1)). "Whether a particular function is essential is a factual determination that must be made

on a case by case basis," and all relevant evidence should be considered, however, the ADA gives deference to the employer's judgment "as to what functions of a job are essential." 29 C.F.R. § 1630, App.; 42 U.S.C. § 12111(8). Job descriptions, prepared before advertising and interviewing applicants, shall be considered evidence as to what functions are essential to the job. 42 U.S.C. § 12111(8).

Here, defendant maintains that attendance is an essential function of the Accounts Payable Analyst position, the position plaintiff held during her employment with defendant. Defendant notes that the job description for the position identifies attendance as a job requirement, and that plaintiff and her supervisor both acknowledge that attendance during the normal workday is essential for the position. Plaintiff, however, argues that there is a factual dispute as to whether attendance is, in fact, an essential function of the job. She claims that defendant provided no context as to what kind of attendance is required, including how many hours an employee is required to work, what days per week are scheduled work days, and whether it is acceptable to work from home or whether physical attendance is required.

The Tenth Circuit has found that "physical attendance in the workplace is itself an essential function of most jobs." *Punt v. Kelly Srvs.*, 862 F.3d 1040, 1051 (10th Cir. 2017) (citing *Mason v. Avaya Commc'ns, Inc.*, 357 F.3d 1114, 1119 (10th Cir. 2004)); *see also Carter*, 662 F.3d at 1146–47 (noting that "regular attendance may fairly be characterized as an essential function of some jobs."). The Tenth Circuit has deferred to an employer's assertion that physical attendance is an essential function of the position at issue. *See Mason*, 357 F.3d at 1122 (noting that, in a case involving the essential function of physical attendance, "we do not sit 'as a 'super personnel department' that second guesses employers' business judgments . . . . The only evidence [plaintiff] submitted in the district court regarding the essential functions of the service coordinator position was her own self-serving testimony. We are reluctant to allow employees to define the essential functions of their positions based on their personal viewpoint and experience.").

Here, the "Summary of Job Responsibilities and Requirements" used to advertise the Accounts Payable Analyst position noted that the scheduled work hours for the position were "Monday - Friday, 8:00 a.m. to 5:00 p.m.; Additional hours as needed." (Doc. 30-6, at 2.) The listed working conditions were "[n]ormal office working conditions. Must have a satisfactory work record including good attendance." (Doc. 30-6, at 3.) It is undisputed that plaintiff emailed her supervisor to request an 8:00 – 4:40 work schedule, including a 30-minute lunch. And Shurtz, plaintiff's supervisor, testified that regular attendance during the work day is essential to the position because many of the responsibilities were time sensitive and required immediate communication with other employees, vendors, and banks. Based on this evidence, the court believes there is no genuine issue of fact as to whether attendance during the regular work day was an essential function of plaintiff's position: attendance was essential.

To prove a prima facie case of ADA discrimination plaintiff must now show that she was qualified, with or without reasonable accommodation, to perform that essential functions of her job— regular attendance. Plaintiff argues that defendant did not provide a reasonable accommodation to enable her to perform that essential function, and even without a reasonable accommodation, there is question of fact as to whether she, in fact, failed to perform that essential function of her position.

First, the court finds no factual basis to disagree with defendant's judgment that plaintiff did not perform the essential function of her position—regular attendance. Plaintiff was absent on 12 occasions in less than four months of employment. Her supervisor testified in an affidavit that the large number of plaintiff's absences was unacceptable to her. Plaintiff does not present any evidence that would dispute this fact.

The question then becomes whether a reasonable accommodation would have enabled plaintiff to satisfy her position's essential attendance function. Whether an accommodation is reasonable "must be made on the facts of each case taking into consideration the particular individual's disability and

employment position." *Punt*, 862 F.3d at 1051. Under the ADA, a reasonable accommodation may include:

> (A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and
>
> (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9). "Whether an accommodation is reasonable under the ADA is a mixed question of law and fact." *Punt*, 862 F.3d at 1050–51. A request to be relieved from an essential function of the position is not, as a matter of law, "a reasonable or even plausible accommodation." *Mason*, 357, F.3d at 1122.

Here, plaintiff claims that there were several ways defendant could have accommodated her periodic migraine episodes, including leaves of absence, being allowed to work from home after her symptoms subsided, or allowing plaintiff to arrive early or stay late to make up hours. Defendant argues that these options are unreasonable because an essential function of plaintiff's position requires her physical attendance during normal working hours. And plaintiff's unpredictable and frequent absences were difficult for defendant to plan around. Defendant maintains that providing plaintiff with a leave of absence whenever it happens to be needed is an unreasonable accommodation request.

It is fairly well settled in this Circuit that if physical attendance is an essential job function, then an employee's request to work from home is, as a matter of law, unreasonable. *See Punt*, 862 F.3d 1051; *Mason*, 357 F.3d at 1124. And although a part-time or modified work schedule might be a reasonable

accommodation, "an unpredictable, flexible schedule that would permit [a plaintiff] to leave work whenever she has a medical episode is unreasonable as a matter of law." *Crowell v. Denver Health and Hosp. Auth.*, 572 F. App'x 650, 659 (10th Cir. 2014); *see also Murphy v. Samson Resources Co.*, 525 F. App'x 703, 706 (10th Cir. 2013) (affirming the district court's finding that a flexible work schedule was not a reasonable accommodation for plaintiff's migraine condition when regular and punctual attendance was an essential function of the position.). The Tenth Circuit distinguished sporadic and unpredictable requests for leave from advance requests for leave tied to a specific amount of time needed to recover from an injury or illness so that the employee can perform the essential functions of the job in the future. *See Punt*, 862 F.3d at 1051. Such requests are reasonable so long as the accommodations "presently, or in the *near future*, enable the employee to perform the essential functions of his job . . . ." *Id.* (noting that the employee is required to inform the employer of the expected duration of the impairment, not the duration of the leave request, because "without an expected duration of impairment, an employer cannot determine whether an employee will be able to perform the essential functions of the job *in the near future* and therefore whether the leave request is a 'reasonable accommodation.'").

Although plaintiff offered several suggestions for accommodating her when she suffered the effects of her migraine condition, the court believes that, considering Tenth Circuit precedent, these accommodations are unreasonable as a matter of law because they would require defendant to allow plaintiff sporadic and unpredictable time off. It is true that employers must expect that their employees will sporadically miss work due to illness or injury. And many employers account for this by providing sick leave. But this is not a case where it is reasonable for defendant to accommodate plaintiff's need to miss work to recover from migraine symptoms. Plaintiff testified that she would need 12 to 24 hours to recover from a migraine. During her employment with defendant, she missed all or part of two days at a time when she was struck with a migraine. And she testified that she experienced an average of five

migraines a year. Plaintiff's proposed accommodation would therefore require defendant to give plaintiff at least ten unscheduled days off for her migraine condition. And when considering the facts of this case, plaintiff had missed seven days (in addition to the five she was absent for her migraines) in less than four months of employment. It was simply unreasonable to expect defendant to accommodate her condition by allowing her an unpredictable and flexible schedule, especially considering the high frequency of her non-migraine related absences. Because one of the essential functions of plaintiff's position was regular attendance during work hours, the court finds that plaintiff was not qualified to perform the essential functions of the job, and that her suggested accommodations were unreasonable.

Because the court finds that plaintiff could not perform the essential functions of her job without a reasonable accommodation, and because it is unreasonable to require defendant to accommodate plaintiff by allowing her to leave work whenever she has a migraine, it is unnecessary to determine whether there is evidence that defendant discriminated against plaintiff. Plaintiff has failed to establish a prima facie case of disability discrimination under the ADA, and defendant is therefore entitled to summary judgment.

**IT IS THEREFORE ORDERED** that defendant's Motion for Summary Judgment (Doc. 29) is granted.

This case is closed. The clerk of the court is ordered to enter judgment in favor of defendant and against plaintiff.

Dated September 27, 2019, at Kansas City, Kansas.

s/ Carlos Murguia
**CARLOS MURGUIA**
**United States District Judge**